**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

PAUL "MIKE" PIPPIN,

      Plaintiff,

vs.                                                                No. CIV 011247 WFD-RLP

BURLINGTON RESOURCES OIL AND GAS
COMPANY a/k/a BURLINGTON RESOURCES,
INCORPORATED,

      Defendant.

**DEFENDANT'S PROPOSED FINDINGS OF FACT AND**
**CONCLUSIONS OF LAW**

      Defendant Burlington Resources Oil and Gas Company hereby submits its Proposed

Findings of Fact and Conclusions of Law on the issue of Plaintiff's claim for front pay, which in

an age discrimination case, is an equitable issue to be decided by the court. *Griffith v. State of*

*Colo,* 17 F.3d 1323 (10th Cir. 1994).

**PROPOSED FINDINGS OF FACT**

1.      Plaintiff was employed by Defendant from 1990 until April 27, 2000.

2.      At the time of his termination, Plaintiff was 51 years old.

3.      Plaintiff has a Bachelor of Science degree in general engineering.

4.      Plaintiff has a substantial amount of post-collegiate training on various petroleum

      engineering topics.

5.      Plaintiff is a registered professional petroleum engineer.

6.      In 2000, Plaintiff had 30 years of experience as a petroleum engineer, including

      23 years of experience in the San Juan Basin.



7.    Plaintiff possesses the skills, education, and experience such that, with a reasonable effort, Plaintiff could have become re-employed in a reasonably comparable position within three years or less from the date of his termination.

8.    Plaintiff's age at the time of his termination would not interfere with his ability to find re-employment, and continue his career, with a new employer.

9.    Plaintiff's salary for the period 1990 to 1999 is as follows:



| YEAR | SALARY |
|------|--------|
| 1991 | $63,025 |
| 1992 | $65,610 |
| 1993 | $67,635 |
| 1994 | $67,800 |
| 1995 | $68,950 |
| 1996 | $70,350 |
| 1997 | $73.420 |
| 1998 | $79.210 |
| 1999 | $78,840 |
| 2000 | $80,325 |

10.    Defendant has various bonus programs for its technical staff. Plaintiff's salary, including bonuses, for the period 1990 to 1999 is as follows:



| YEAR | SALARY |
|------|--------|
| 1991 | $78,458 |
| 1992 | $87,931 |
| 1993 | $94,073 |
| 1994 | $90,266 |
| 1995 | $92,520 |
| 1996 | $91,091 |
| 1997 | $125,422 |
| 1998 | $118,680 |
| 1999 | $121,248 |

11.     Plaintiff's salary during the 9 years that he worked for Defendant increased at an average rate of 3% per year. Plaintiff's overall income, because of fluctuations in bonuses remained relatively constant from 1991 to 1996 in the low $90,000 range, made a jump in 1997, and since then remained relatively constant in the $120,000 range.

12.     Plaintiff could reasonably expect an annual salary increase of 3% per year had he remained employed by Defendant.

13.     Plaintiff could reasonably expect bonuses in the range of $25,000 per year had he remained employed by Defendant.

14.     During the first seven months after he was terminated (May, 2000 to December 2000), Plaintiff made minimal attempts to find comparable employment by randomly sending out cold resumes to approximately twenty companies, going to breakfast with contractor friends in the natural gas industry, and reading the newspaper classifieds for employment listings. With respect to those companies to whom Plaintiff sent a resume, Plaintiff did not make any follow up contacts to further express his interest in obtaining employment.

15.     Plaintiff did not utilize the services of an employment agency.

16.     Plaintiff did not seek employment with the majority of natural gas producers who operate in the San Juan Basin.

17.     Plaintiff did not utilize the research and employment locator resources that were readily available to him.

3

18.   In 2000, Terry Dobson offered Plaintiff a consulting petroleum engineering position on a contract basis, for a position in Denver, which paid $325.00 per day. Plaintiff rejected this offer.

19.   In 2000, another petroleum engineering firm (Devon) offered Plaintiff a consulting petroleum engineering position on a contract basis in Raton, New Mexico, for which Plaintiff could "name his own salary" and for which Plaintiff could have earned equal or greater income than he earned while working for Defendant. Plaintiff rejected this offer.

20.   Plaintiff discontinued his search for a petroleum engineering position on or before January, 2001.

21.   The natural gas market had a major upturn in late 2000 - early 2001, and petroleum engineering positions were readily available to qualified and experienced petroleum engineers.

22.   Other employees, including petroleum engineers, who were terminated during the April, 2000 reduction in force and who made a reasonable job-search effort, were re-employed in reasonably comparable positions, with comparable pay and benefits within six months of the date of termination.

23.   Plaintiff refused to consider any employment opportunities that were not in Farmington, New Mexico.

24.   Petroleum engineers are highly paid professionals, and as such reasonably expect to relocate to another city as a normal career occurrence.

25.   Petroleum engineers who are employed by Defendant are frequently requested to relocate in conjunction with their employment.

4

26.   Had Plaintiff remained employed by Defendant, Plaintiff likely would have had to relocate to another city if he wanted to advance his career.

27.   Approximately six months after his termination from Defendant, Plaintiff chose to become self-employed as a petroleum engineering consultant.

28.   Plaintiff's self-employment as a petroleum engineering consultant left him with ample time and opportunity to continue his search for re-employment.

29.   As a self-employed person, Plaintiff has earnings through a salary that he pays to himself, income that he has reinvested as capital assets into his business, personal expenses which are absorbed by his business including personal car expenses, insurance, vacations, use of the home as an office, computer expenses and personal business expenses.

30.   After his termination, Plaintiff became self-employed as a petroleum engineering consultant.  Plaintiff's revenues as an petroleum engineering consultant are as follows:

31.   In his second year as an engineering consultant, Plaintiff increased his revenues by $17,436.00, an increase of 22.4%.  Plaintiff has demonstrated the ability to grow his business faster than the rate at which his income was increasing while Plaintiff was employed by Defendant.

32.   Plaintiff's self-employment is not a 40-hour per week job.  Plaintiff is able to engage in other business pursuits during the time he is not working as a petroleum engineer.  Plaintiff has generated additional revenue through residential income property that Plaintiff owns and manages.

5



| Year | Salary |
|------|-----------|
| 2001 | $77,929.00 |
| 2002 | $95,365.00 |

## PROPOSED CONCLUSIONS OF LAW

### FRONT PAY DENIED BECAUSE COMPARABLE EMPLOYMENT COULD HAVE BEEN SECURED BY PLAINTIFF PRIOR TO TRIAL

1.     Front pay is equitable relief, and it is within the discretion of the Court to award or deny such a remedy. *Dominic v. Consolidated Edison Co. of New York*, 822 F.2d 1249, 1257-58 (2nd Cir. 1987).

2.     Considering Plaintiff's work history, education, special training, experience, job skills, and the employment opportunities available, Plaintiff, with reasonable effort, could have been re-employed in three years or less, in a reasonably comparable position with comparable pay and benefits.  See e.g. *Mason v. Oklahoma Turnpike Auth.*, 115 F. 3d 1442, 1458 (10th Cir. 1997); *Dominic v. Consolidated Edison Co. of New York*, 652 F. Supp. 815, 819-20 (S.D.N.Y. 1986), aff'd 822 F.2d 1249, 1257-58 (2nd Cir. 1987).

6

3.    Because Plaintiff, with reasonable effort, could have been re-employed prior to the start of the trial in this matter, the Court, in its discretion, denies Plaintiff's claim for front pay.

## ALTERNATIVELY, FRONT PAY DENIED BECAUSE PLAINTIFF DISCONTINUED HIS JOB SEARCH, THEREBY FAILING TO MITIGATE HIS DAMAGES

4.    Plaintiff is required to make a reasonable and good faith effort to mitigate his damages, but is not held to the highest standard of diligence. *Spulak v. K-Mart Corp*, 894 F.2d 1150, 1158 (10th Cir. 1990).

5.    Defendant bears the burden to establish that the Plaintiff did not exercise reasonable diligence. *Spulak v. K-Mart Corp*, 894 F.2d 1150, 1158 (10th Cir. 1990).

6.    Plaintiff, in refusing to consider petroleum engineering positions in any community other than Farmington, New Mexico, failed to make a reasonable effort to secure re-employment.

7.    Plaintiff, by discontinuing his job search in seven months or less, failed to make a reasonable effort to secure re-employment.

8.    Plaintiff, who failed to utilize an employment agency or other professional assistance in his job search, failed to make a reasonable effort to secure re-employment.

9.    Plaintiff, who mailed out fewer than 20 resumes, and did not engage in any efforts to follow up with prospective employers, or express a continued interest in re-employment, failed to make a reasonable effort to secure re-employment.

7

10. Plaintiff, who failed to submit resumes or otherwise respond to petroleum engineering job opportunities listed in the local classifieds advertisements, failed to make a reasonable effort to secure re-employment.

11. Plaintiff who failed to seek employment with the majority of petroleum engineering companies operating the Farmington area, and none outside the Farmington area, failed to make a reasonable effort to secure reemployment.

12. Plaintiff's job search efforts approximated the minimum required to obtain unemployment insurance benefits, and do not reflect the effort of someone who is truly interested in finding re-employment.

13. Had Plaintiff exercised reasonable diligence in seeking another petroleum engineering position, it is more likely than not that Plaintiff would have obtained a comparable petroleum engineering position in less than three years.

14. During the Fall, 2000 and thereafter, petroleum engineering positions at salaries and benefits comparable to that paid by Defendant to Plaintiff were available to qualified, experienced petroleum engineers.

15. A plaintiff who initially exercises reasonable diligence but then reduces his efforts after an initial lack of success has not met his duty to mitigate his damages. *Payne v. Security Savings and Loan Association*, 924 F.2d 109, 109-10 (7th Cir. 1991); *Denesha v. Farmer Inf. Exch.*, 161 F.3d 491, 502 (8th Cir. 1998).

16. Where a Plaintiff has failed to mitigate his damages, front pay damages may not be awarded as a matter of law. *Dominic v. Consolidated Edison Co. of New York*, 822 F.2d 1249, 1257-58 (2nd Cir. 1987).

**ALTERNATIVELY, FRONT PAY IS DENIED BECAUSE PLAINTIFF'S EXPECTED INCOME EQUALS OR EXCEEDS THAT WHICH HE WOULD HAVE EARNED HAD HE REMAINED EMPLOYED BY DEFENDANT.**

17.    The doctrine of mitigation of damages prevents the wage earner from obtaining a windfall, i.e., a double recovery.  The doctrine of mitigation of damages requires that the finder of fact offset legitimate post-discharge earnings against the damages claims.  *Carden v. Westinghouse Elec. Corp.,* 850 F.2d 996, 1005 (3rd Cir. 1998).

18.    In mitigating his damages, a plaintiff need not go into another line of work, accept a demotion, or take a demeaning position.  *Ford Motor Company v. EEOC,* 458 U.S. 219, 231 (1982).    Nor must a plaintiff seek employment which is not consonant with his particular skills, background, and expertise, or which involves conditions that are substantially more onerous than his previous position.  *N.L.R.B. v. Madision Courier, Inc,* 472 F.2d 1307, 1320-21 (D.C. Cir. 1972).

19.    Self-employment may be an acceptable way to mitigate damages.  *Carden v. Westinghouse,* 850 F.2d 996 (3rd Cir. 1998).

20.    Because the nature of self-employment is different than employment with a third party employer, numerous unique factors must be considered when calculating self-employment earnings.  The calculation of self employment earnings includes the salary paid to the employee, income that has been reinvested as capital assets in the business, personal expenses which are absorbed by the business including personal car expenses, insurance, vacations, use of the home as an office, computer expenses and personal business expenses.  *Carden v. Westinghouse*

*Elec. Corp.,* 850 F.2d 996, 1006 (3rd Cir. 1998); *Manning v. McGraw Hill, Inc,* 64 F. Supp. 2d 996, 1001(D. Colo. 1998) (liability finding against employer reversed in 200 U.S. App. LEXIS 13984 (10th Cir. 2000). In a self-employed business, the employee benefits by any increase in the value of the business, and the increased value of the business is to be offset against front pay damages. *Id.*

21.    In the event front pay is awarded, the front pay award must be discounted to its present net value.

MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.

By _____

Michael L. Carrico
Bank of America Centre, Suite 1000
500 Fourth Street, NW
Albuquerque, NM 87103-2168
Telephone: (505) 848-1800

WE HEREBY CERTIFY that a true and correct
copy of the foregoing pleading was mailed to
Ray Twohig this _15th_ day of July, 2003.

By _____

Michael L. Carrico

K:\dox\client\51219\152\W0309347.DOC

10